**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT A. KENNEDY,<br><br>Plaintiff,<br><br>v.<br><br>TINA WALKER, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:25-cv-1411<br><br>Magistrate Judge Patricia L. Dodge |

**MEMORANDUM OPINION**[1]

Plaintiff Robert A. Kennedy ("Kennedy") brings this pro se civil action against various individuals employed by the Pennsylvania Department of Corrections ("DOC") and Wellpath, LLC ("Wellpath"). Kennedy's claims arise from events alleged to have occurred while he was incarcerated at State Correctional Institution ("SCI") at Fayette.

Pending before the Court are three motions to dismiss. For the following reasons, the Court will grant the motions filed by the DOC employees (ECF No. 31) and Wellpath (ECF No. 29). The motion filed by the Wellpath employees (ECF No. 28) will be denied.

## I. Relevant Procedural History

Kennedy commenced this action via Complaint on September 30, 2025. (ECF No. 5.) The Complaint names Defendants Tina Walker, Martin Switzer, M. Farris, James Bright (collectively, "DOC Defendants"), Laurene Donnelly, Dr. Michael Herbik[2] (collectively, "Wellpath Providers"), and Wellpath.[3] Each Defendant is sued in their official and individual capacity. (*Id.*

---

[1] In accordance with 28 U.S.C. § 636(c), the parties consented to full jurisdiction by a United States Magistrate Judge. (ECF Nos. 2, 20, 22, 48.) The undersigned therefore has authority to conduct all proceedings and enter final judgment.

[2] On November 20, 2025, counsel filed a Suggestion of Death as to Dr. Michael Herbik. (ECF No. 15.) The Court later granted Kennedy's motion to substitute Christie Clayton, Administrator of Dr. Herbik's Estate, as a party. (ECF Nos. 37, 40.)

[3] Individual Defendants are referred to by last name throughout this Opinion.

¶¶ 5-11.)

The Court construes the Complaint as asserting the following claims: Eighth and Fourteenth Amendment failure to protect against Walker and Switzer; Eighth Amendment denial of medical care against Herbik, Donnelly, Bright, Farris, and Wellpath; and First Amendment retaliation against Herbik, Donnelly, and Bright. (*Id.* at 16-19.)

On December 22, 2025, Wellpath and the Wellpath Providers filed separate motions to dismiss the Complaint based on the release of claims contained in the Chapter 11 reorganization plan of Wellpath Holdings, Inc. (ECF Nos. 28, 29.) The Court set a briefing schedule (ECF No. 30), and Kennedy filed a single response to both motions on April 10, 2026 (ECF No. 43).

On December 29, 2025, the DOC Defendants moved for partial dismissal under Rule 12(b)(6). The DOC Defendants seek dismissal of all official-capacity claims asserted against them, as well as the Eighth and Fourteenth Amendment claims against Walker and Switzer. (ECF Nos. 31, 32.) Kennedy responded to the motion on March 30, 2026. (ECF No. 41.)

## II. <u>Relevant Factual Allegations</u>[4]

According to the Complaint, at a quarterly Inmate General Welfare Fund ("IGWF") meeting on September 13, 2023, inmate representatives raised concerns over SCI Fayette's lack of safety rails on top bunks. (ECF No. 5 ¶ 13.) Various members of SCI Fayette's administrative staff attended the meeting, including Superintendent Tina Walker and Deputy Superintendent Martin Switzer. (*Id.* ¶ 14.) The inmates requested that safety rails be installed on all top bunks "due to the number of falls and severe injuries" that had previously occurred at SCI Fayette. (*Id.* ¶ 17.) Administrative staff allegedly responded to the inmates' request by saying: "Not looking at this

[4] Only those facts relevant to the disposition of the pending motions to dismiss are discussed herein.

point, but we can inquire about it."[5] (*Id.* ¶ 15.)

Three days later, on September 16, 2023, Kennedy alleges that he rolled over in his sleep and fell from his top bunk, landing approximately five feet below on the concrete floor. The bunk did not have safety rails. (*Id.* ¶¶ 18-19.) Immediately after the fall, Kennedy was unable to stand due to "excruciating pain" in his back, hip, legs, head, and neck. (*Id.* ¶ 21.)

Kennedy requested to be treated at an outside hospital but was instead taken to SCI Fayette's infirmary and given ibuprofen. (*Id.* ¶ 31.) Over the ensuing months, Kennedy contends that his injuries were treated primarily with ibuprofen and his requests to be seen at an outside hospital continued to be denied. *See, e.g.*, *id.* ¶¶ 42-46; 51-55; 86. Among other things, he alleges that SCI Fayette medical staff deliberately delayed or denied his access to appropriate treatment for his alleged injuries. (*Id.* ¶ 95.)

Kennedy also filed a grievance (#1053865) and a staff request to SCI Fayette's maintenance department concerning the lack of safety rails on his bunk (*Id.* ¶¶ 47-48.) As relevant here, Kennedy asserts that Walker and Switzer were deliberately indifference to inmate safety because they knowingly declined to install upper-bunk safety rails despite advance notice of the alleged danger. (*Id.* ¶ 96.)

[5] Kennedy attached the signed declaration of SCI Fayette inmate Pierre Pinson ("Pinson") to his Complaint. (ECF No. 5 at 29.) Pinson states that he attended the IGWF meeting and confirmed that Walker and Switzer were present when the inmates' request for safety rails was denied. The declaration also states that the "IGWF reps maintained that other prisons had such rails and asked why we weren't afforded the same safety protocols." (*Id.*)

## III. Legal Standard

A complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To decide a 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In assessing the sufficiency of a complaint, a court must therefore: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away allegations that amount to mere conclusions and are thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Typically, if a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Additionally, the filings of a pro se party must be liberally construed and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). Moreover, the court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). That said, "pro se litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245

## IV. <u>Discussion</u>

### A. Wellpath Bankruptcy

The Court takes judicial notice of the following facts. On November 11, 2024, Wellpath and certain of its affiliates filed petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. On May 1, 2025, the bankruptcy court confirmed Wellpath's Chapter 11 reorganization plan ("The Plan"). *See In re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025). The Plan became effective on May 9, 2025. *See* ECF No. 42-1.

Under The Plan, all claims and causes of action against Wellpath and the affiliated debtor-companies that arose before November 11, 2024, have been discharged and holders of such claims are permanently enjoined from, among other things, commencing or continuing any proceeding of any kind in connection with such claims. *See* 11 U.S.C. § 524 (a) ("A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .").

Kennedy's fall occurred on September 16, 2023. Because his claim arose before November 11, 2024, the claim against Wellpath is discharged under The Plan. Wellpath's motion will therefore be granted and it will be dismissed without prejudice to Kennedy's right to pursue any available remedies in the bankruptcy court.

The Plan also includes a Third-Party Release relating to claims against current and former Wellpath employees. Article IX of The Plan requires that any holder of such a claim against an employee of Wellpath or its affiliates who is or was an incarcerated individual "opt out" of the Third-Party Release set forth in Section IX.D of The Plan. Article IX.F of The Plan provides that holders of claims subject to the Third-Party Release who failed to opt out by the court-imposed deadline of July 30, 2025, are permanently enjoined from "commencing or continuing any action or proceeding of any kind on account of or in connection with or with respect of" any released claims.

It is undisputed that Kennedy is and was incarcerated. The Wellpath Providers argue that as employees of Wellpath, Kennedy was required to opt out of the Third-Party Release to preserve any claims asserted against them. They contend that he failed to do so, thereby waiving his claims.

*See Williams v. The Geo Group*, 2025 WL 2325649, at *9 n.11 (E.D. Pa. Aug. 11, 2025) ("[A]bsent any information that [plaintiff] has opted out of the Third-Party Releases or otherwise taken action in the Bankruptcy Court, the claims against [defendant] or any other Wellpath employee may be barred by the injunction contained in the confirmed Chapter 11 Plan.").

In response, Kennedy submitted evidence that he opted out well before the July 30, 2025 deadline. Further review of the bankruptcy court's docket confirms that Kennedy is listed as a creditor. Because Kennedy affirmatively opted out of the Third-Party Release, his claims against the Wellpath Providers may proceed. Accordingly, the Wellpath Providers' motion to dismiss will be denied.[6]

**B. DOC Defendants**

1. Eleventh Amendment immunity

The Court now turns to the DOC Defendants' partial motion to dismiss. The DOC Defendants first seek dismissal of all official-capacity claims, arguing that such claims are barred by the Eleventh Amendment. (ECF No. 32 at 6-8.)[7]

The Eleventh Amendment prohibits actions in the federal courts against states, their agencies, and any state officials acting within their official capacities. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state.") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The DOC is an agency of the Commonwealth of Pennsylvania and,

---

[6] The Wellpath Providers did not raise any other grounds for dismissal. All claims asserted against them are therefore still viable.

[7] Kennedy's response does not substantively address any of the DOC Defendants' specific arguments. *See* ECF No. 41.

as such, any DOC employee sued in their official capacity is entitled to Eleventh Amendment immunity unless a relevant exception applies. *See*, *e.g.*, *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).

The Third Circuit has held that Eleventh Amendment immunity is subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

The first two exceptions do not apply here. The Commonwealth has not waived its immunity, *see, e.g.*, *id.* (citing 42 Pa. Cons. Stat. § 8521(b)), and Congress did not abrogate states' sovereign immunity when it enacted § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979). Therefore, to the extent that Kennedy seeks to assert any § 1983 claims against the DOC Defendants in their official capacities for monetary damages, those claims are barred by the Eleventh Amendment and will be dismissed with prejudice.

As for the *Ex parte Young* exception, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation modified). As relevant here, Kennedy requests injunctive relief requiring that Walker and Switzer "have safety rails installed on the top bunks at SCI Fayette[.]" (ECF No. 5 at 20-21.)[8]

---

[8] The DOC Defendants do not address Kennedy's claim for injunctive relief and instead request "that all of Plaintiff's claims for monetary damages be dismissed with prejudice as to Corrections Defendants in

As courts have found, official capacity claims for prospective injunctive relief, like the relief sought by Kennedy, "could conceivably go forward, but only against an appropriate DOC official who could effectuate the injunctive relief that [the plaintiff] requests in his lawsuit." *Hawley v. Salamon*, 2025 U.S. Dist. LEXIS 145211, at *25 (M.D. Pa. July 29, 2025) (citing *Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016) ("In seeking a prospective injunction against the implementation of an unconstitutional state policy, a plaintiff is required to name an official or officials who can appropriately respond to injunctive relief.")).

The request for an injunction therefore is not inherently barred by the Eleventh Amendment simply because Walker and Switzer are state officials. Whether the requested relief remains viable, however, depends on whether Kennedy properly alleged an underlying constitutional violation. As discussed below, he has not.

2. <u>Fourteenth Amendment claim</u>

Kennedy captions the failure-to-protect claim asserted against Walker and Switzer as arising under both the Eighth and Fourteenth Amendments. As the Supreme Court has made clear, however, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation omitted). *See also Betts*, 621 F.3d at 260 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of

---

their official capacity." (ECF No. 32 at 8.)

substantive due process."); *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 447-48 (3d Cir. 2020).

Kennedy is a convicted and sentenced state prisoner. The Eighth Amendment therefore provides the explicit source of constitutional protection for his claims relating to prison conditions. Moreover, the Complaint identifies no independent procedural due process deprivation, nor does it allege the deprivation of a protected liberty interest separate from the challenged conditions of confinement—i.e., the lack of bunk safety rails. Thus, to the extent Kennedy is attempting to assert an independent Fourteenth Amendment substantive due process claim against Walker and Switzer, that claim is dismissed as duplicative of his Eighth Amendment claim. The dismissal will be with prejudice as amendment would be futile.

3. <u>Eighth Amendment claim</u>

Finally, the DOC Defendants seek dismissal of the Eighth Amendment failure-to-protect claim, contending that Kennedy failed to plead facts showing that Walker and Switzer were deliberately indifferent to inmate health and safety. The DOC Defendants assert that Kennedy's claim fails because the mere absence of safety rails on top bunks is not an objectively serious condition capable of rising to the level of constitutional misconduct. They also argue that the allegations that Walker and Switzer knew that the lack of railings caused a safety issue supports a finding of negligence at best, thereby failing to show deliberate indifference. *See* ECF No. 32 at 15-17. The Court agrees.

The Eighth Amendment prohibits cruel and unusual punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation, and medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). The Eighth

Amendment does not, however, require that prisons be comfortable. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citing *Rhodes*, 452 U.S. at 349).

To state a claim under the Eighth Amendment, plaintiffs must make both an objective and subjective showing. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective prong, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Mammana*, 934 F.3d at 373 (quoting *Farmer*, 511 U.S. at 834). The deprivation alleged must be "objectively, sufficiently serious" to have resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes*, 452 U.S. at 347)).

Even accepting as true Kennedy's allegations concerning the condition of the bunk beds and Walker and Switzer's actual knowledge of the condition, the allegations fail to meet the standard required to establish a violation of the Eighth Amendment. As many other courts in this circuit have found, "a lack of safety rails on top bunks does not pose a risk of harm serious enough to support an Eighth Amendment claim." *Copeland v. Perry*, 2023 WL 3177832, at *3 (W.D. Pa. May 1, 2023) (collecting cases). *See also Mikell v. Harry*, 2018 WL 501000, at *4 (M.D. Pa., Jan. 22, 2018) ("Sleeping in a bunk bed without guardrails does not violate contemporary standards of decency, and thus, does not constitute cruel and unusual punishment."); *Tutora v. Sweeney*, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Walker v. Walsh*, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable

risk of future injury.").

The allegations are also insufficient to establish deliberate indifference. The Eighth Amendment's subjective requirement requires the plaintiff to show that a prison official was deliberately indifference to their health or safety. *Farmer*, 511 U.S. at 834. The official "must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Mere negligence or inadvertence does not satisfy the deliberate indifference standard and therefore cannot constitute an Eighth Amendment violation. *Estelle*, 429 U.S. at 105-106. *See also Mikell*, 2018 WL 501000, at *5 ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference.").

Based on the above, the DOC Defendants' motion to dismiss will be granted such that Kennedy's Eighth Amendment claim against Walker and Switzer based on the lack of safety rails will be dismissed. Because amendment would be futile, the dismissal will be with prejudice.[9]

## V. Conclusion

For these reasons, Wellpath's motion to dismiss (ECF No. 29) will be granted and it will be dismissed from this action. The Wellpath Providers' motion (ECF No. 28) will be denied.

The DOC Defendant's partial motion to dismiss (ECF No. 31) will be granted as follows:

1. All claims brought against the DOC Defendants in their official capacities are dismissed with prejudice; and

2. All claims brought against Defendants Walker and Switzer are dismissed with prejudice and they are terminated from this action.

[9] A large portion of the DOC Defendants' brief sought dismissal of the personal-capacity claims against Walker and Switzer based on lack of personal involvement. *See* ECF No. 32 at 8-12. The Court need not reach this argument, as dismissal is proper on other grounds.

Appropriate orders to follow.

Dated: August 18, 2026

/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE